later dismissed. Upon information and belief no investigation or disciplinary action was taken against the police officers.

b. On October 2, 2010, Darin Montague, an African American male, was lawfully crossing a street when Officers from the 52nd precinct approached him and asked if he had any drugs on him. The Officers proceeded to frisk Mr. Montague, and despite not finding any contraband, they handcuffed and arrested him. Later at the precinct they made him strip naked of all clothing, bend over and cough. He was illegally detained and imprisoned for hours, without filing any charges against him. Upon information and belief no investigation or disciplinary action was taken against the police officers.

c. On November 6, 2010 at 2 a.m. Jermel Palmer, a young African American male, was inside the lobby of his building located at 425 East 105th Street, New York, New York, when an Officer from the 23rd precinct approached him, ordered him to turn around, and searched him without just or probable cause. Not finding any contraband, the Officer let Mr. Palmer go, only to stop him again before he was allowed to continue upstairs in the elevator. When Palmer objected to the officer's conduct, he was forcefully pulled out of the elevator, repeatedly punched him in the face, repeatedly slammed him into walls, the floor, the police vehicle, and punched him in the ribs, all while handcuffed. The Officer, a sergeant, falsely charged Mr. Palmer with attempted assault, resisting arrest, and harassment. All criminal charges were later dismissed. Palmer sustained injuries to his right shoulder, wrists, knees, elbows, gums, jaw, and was required to get a steroid injection. Upon information and belief no investigation or disciplinary action was taken against the police officers.

d.       On November 28, 2010 at 1:30 a.m. Amin Torres was exiting his friend's

apartment located at 1304 Merriam Avenue in the Bronx, when an Officer from the 44th precinct ordered him to stop and get against a wall. The Officer began to search him without just or probable cause. Upon searching Torres, the Officer found a small, but legal knife. He forcefully pushed Torres against the wall, handcuffed him, and threw him to the ground. Torres was taken to the precinct, continuously called derogatory names and was searched a second time. He was falsely charged with possession of a weapon in the fourth degree. The charge was later dismissed. Candida Stark, the person whose home Torres was visiting, witnessed and objected to the police treatment of Torres. She was assaulted by the police, threatened, and pushed back inside her building. Stark suffered multiple contusions to the face and leg, and severe pain to the right eye. Upon information and belief no investigation or disciplinary action was taken against the police officers.

e.      On July 9, 2008 at 10:15 p.m. June and Bridgett Pressley, two young African American females, were at their residence when Officers of the 81st precinct approached June. They asked her for identification without having any justifiable reason for doing so. June went inside the apartment to retrieve her ID. The Officer, without a warrant, and without probable cause or reasonable suspicion, forcibly entered the apartment behind her. June was pushed and thrown about the apartment and into her television. While on the floor, she was repeatedly struck with a nightstick. The Officers struck her sister Bridgett who was pregnant at the time. Both individuals were falsely charged with obstructing governmental administration, resisting arrest, disorderly conduct, and harassment, which were later dismissed. Although numerous officers were present not one interceded or reported the misconduct. The civil lawsuit was settled. Upon information and belief no investigation or disciplinary action was taken against the police officers.

f.      On August 3, 2007 at 1 a.m. Maquan Moore, a young African American male, was stopped without just or probable cause by Officers from the 25th precinct. He was grabbed, pulled off his bicycle, thrown against one of the unmarked cars, searched, and placed in handcuffs. While being searched, Officers pulled down his pants, shined a flashlight in the front and back of his boxers, while to bend over so the Officer could look down the back of his boxers, all outside in the presence of Maquan's friends. The Officers threatened Maquan repeatedly, dragged him, and threw him in the back of the unmarked car and slammed the door on his leg. An Officer made Maquan submit to a strip search again at the precinct and then dropped Maquan back at the scene without pressing charges against him. Upon information and belief no investigation or disciplinary action was taken against the police officers.

g.      On September 27, 2007 at 11 p.m. David Franklin, a young African American male, was walking home from night classes when he was stopped and illegally searched without just or probable cause. Officers from the 47th precinct forcefully twisted his arm behind his back, forced him to the ground, struck Franklin, and placed a knee in his back. Franklin was handcuffed, arrested, imprisoned, and falsely charged with Disorderly Conduct which was later dismissed. Upon information and belief no investigation or disciplinary action was taken against the police officers.

h.      On January 5, 2010 at 8 p.m. Ilan Gomez, Edwardo Rivera, Jonathan Baez, and Javier Tavarez, were all in the vicinity outside 2473 Davidson Avenue, in the Bronx when an undercover Officer from the 52nd precinct came up to them and asked if they knew where to buy some weed. Baez told the undercover to go away. A few minutes later, an unmarked police van pulled up on the street and Officers ordered Baez, Gomez, Rivera, and Tavarez to get on the

ground. At the same time, Louis Miranda were returning to his father's and uncle's home. Police Officers, absent probable cause or reasonable suspicion, chased Miranda and attempted broke down the door of the home. They pulled open the door and shot Jamie and Hector Miranda's pit bull. They grabbed Louis, Hector, and Jamie Miranda and beat them up, taking Hector and Jamie into the street in their underwear. Officers slammed Gomez into the sidewalk; Tavarez was kicked, had a knee placed in his back, and assaulted on the sidewalk; Baez was punched in the face numerous times, slammed into the sidewalk numerous times, struck about the body, and had his foot and ankle stepped on. The brutality was caught on video. Supervisors were present and failed to take any action.   No disciplinary report was filed by any supervisors present, and not one officer intervened to stop the abuse from happening. Instead the Officers conspired to file false criminal charges against all individuals which were later dismissed. Two Officers were later arrested, prosecuted, and upon information and belief convicted, and two Sergeants suspended, once evidence of the video came out. However, upon information and belief no investigation or disciplinary action was taken against the other police officers present.

 i.  On January 20, 2010   at 6 p.m. Justin Hawkins, Desmond Ingram, and Akeem Huggins, each young African American males, were lawfully walking down a street, a few blocks from their homes in Staten Island, when Officers from the 120th precinct approached and grabbed Justin and pushed him into a nearby gate. Justin was searched without reasonable suspicion, thrown to the ground, hit with a cellphone, handcuffed and transported to the precinct. Desmond was pushed into a nearby gate, thrown onto the hood of a car, punched in the face, struck with police equipment, punched multiple times while handcuffed, stepped on and kicked repeatedly in the face. Scott Hawkins, Justin's father, heard that there was an incident regarding his son, so he

stepped outside to obtain information from the Officers. He was assaulted, in that he was jumped from behind, maced, choked to the floor, kicked, kneed, struck with a baton, and arrested. Desmond and Akeem were falsely charged with harassment, felony assault, resisting arrest, and disorderly conduct. Justin and Scott were falsely charged with harassment, petty larceny, possession of stolen property, felony assault, and disorderly conduct. All criminal charges were dismissed against all individuals. They all sustained physical injuries at the hands of the police. Although many officers were present during the assault, not one reported it and, upon information and belief there was no meaningful investigation undertaken by the police department into the misconduct and no officers faced any disciplinary charges.

       j.     On August 13, 2008 at 1 p.m., Robert Melendez was at his car which was parked on the corner of Lafayette Avenue and Rosedale Avenue, in the Bronx, when he observed Officers from the 41st precinct forcefully arresting an unknown man. Melendez needed to leave for work, but couldn't because the Officers were searching the gentlemen's property on the trunk of his car. Melendez told the Officers he was a bus operator and needed to leave. One of the Officers became annoyed, and accused Melendez of "smoking" and the other Officer ordered Melendez to be arrested. Melendez sat handcuffed in a police van for more than two hours, was held overnight, falsely charged with criminal possession of marijuana and unlawful possession of marijuana. Both charges were dismissed on October 21, 2008. Upon information and belief no investigation or disciplinary action was taken against the police officers.

       k.     On February 6, 2010 at 10:30 p.m. Daniel Perez was lawfully a guest in the lobby of building at 365 Fountain Avenue, in Brooklyn when two officers from the 75th precinct entered and proceeded to chase Daniel without just cause or reasonable suspicion. As Daniel exited the

building, one Officer tackled him to the ground, slammed his head onto the cement sidewalk, handcuffed him, and when Daniel was picked up, the second officer kneed him in the ribs, making Daniel fall to the ground a second time. The Officers threatened and called Daniel derogatory names as he was transported and searched at the precinct. Daniel was falsely charged with criminal trespass in the third degree, which was later dismissed. He sustained multiple fractures to the face. Upon information and belief no disciplinary action was taken against the police officers.

l.       On August 7, 2010 at 2:30 p.m. Lorraine Sinclair, a young African American woman, was stopped by two Officers of the 41st precinct as they drove by in their patrol car. When she provided her I.D. the Officers claimed that Lorraine had an open warrant, proceeded to get out of the vehicle, grab Lorraine, pushed her to the ground, slammed her face into the floor, knocked her unconscious, and handcuffed her. Lorraine was falsely charged with resisting arrest, harassment, and criminal mischief. All charges against her were later dismissed. Sinclair suffered from deep lacerations to the back and shoulder which resulted in scarring and deep bruising. Although many officers were present during the assault, not one reported it and, upon information and belief there was no meaningful investigation undertaken by the police department into the misconduct and no officers faced any disciplinary charges.

m.       On February 15, 2009 at 6:45 p.m. Eliet Harrell, an African American Male, was a passenger in a vehicle which was lawfully parked in the vicinity of 818 Home Street, in the Bronx, when Officers of the 42nd precinct walked up to the car and inquired if any of the occupants in the car knew someone named "Tony." Upon reply, the Officers ordered everyone to step out of the vehicle and the car was searched. As Mr. Harrell was told to go to the back of the car, along with two other individuals, an Officer began to use abusive language towards everyone who was in the

car. Mr. Harrell was frisked, handcuffed, punched in the face, grabbed and tripped, struck continuously on the ground by multiple officers with fists, feet, batons, and radios. Mr. Harrell was falsely charged with felony assault, misdemeanor assault, resisting arrest, obstruction of governmental administration, criminal possession of marijuana, unlawful possession of marijuana, harassment, and disorderly conduct. He was found not guilty of all charges at trial. Harrell sustained multiple fractures and spinal injury due to the assault. Although many officers were present during the assault, including a Sergeant, not one intervened or reported it and, upon information and belief there was no meaningful investigation undertaken by the police department into the misconduct and no officers faced any disciplinary charges.

      n.      On January 17, 2008 at 9:05 p.m. Vasaan Burris, a young African American male, was lawfully walking on 42nd Street in New York County when Officers of the 14th precinct tackled him from behind, knocked him to the ground, put a knee in his back, and handcuffed him. Burris was brought to a nearby vestibule where he was thrown against a wall, searched and taken to the precinct. The Officers ordered Burris to remove all his clothing and he was searched a second time, including a cavity search, and was released without having any knowledge as to why he was arrested. He was not charged with any crime. Upon information and belief no investigation or disciplinary action was taken against the police officers.

      o.      On October 31, 2008 at 11:00 p.m. Tony Montague, an African American male, was lawfully in the vicinity of 750 Astor Avenue, in the Bronx when an Officer of the 49th precinct, absent a warrant, just or probable cause to stop, seize and search, grabbed Tony from behind. Montague was struck with a baton/asp, punched, and kicked by multiple officers without just or probable cause. He was handcuffed, and continuously struck and maced while handcuffed.

When Michael Montague, the father of Tony, pleaded with the Officers to get medical attention for his son, he too was arrested and taken to the 49th precinct; Tony being falsely charged with attempted assault, resisting arrest, obstruction of governmental administration, and harassment and Michael was falsely charged with obstruction of governmental administration. All charges were dismissed against Michael Montague. Tony Montague was found not guilty of all charges at trial.   Although many officers were present during the assault, not one reported it and, upon information and belief there was no meaningful investigation undertaken by the police department into the misconduct and no officers faced any disciplinary charges.

       p.      On December 9, 2009 at 12:15 p.m. Jerell Wiggins, a young African American male, was lawfully outside his residence located at 2130 Madison Avenue, in New York County when two Officers of the 32nd precinct approached Jerell, ordered him not to move, to "shut up" and to "place his hands the gate". Jerell was searched. Not finding anything, the Officers let him go, however, as Jerell attempted to walk away one Officer grabbed the collar of his jacket, preventing Jerell from leaving. He was thrown to the ground and continuously punched in the face and eye. Jerell was transported to the precinct where he was ordered to remove all clothing and a visual strip search was performed. While asking for medical attention, Jerell was told to "shut up" and threatened if he continued to ask that his paperwork would be pushed to the bottom to insure he stayed within the precinct for the maximum time allotted. Jerell was falsely charged with possession of marijuana, and resisting arrest. All charges were later dismissed. He sustained facial fracture(s). Upon information and belief no investigation or disciplinary action was taken against the police officers, including upon information and belief a Sergeant.

       q.      On July 1, 2008 at 1 p.m., Nathan Dixon, an African American male, was lawfully

outside of 220 West 141st Street in New York County, when officers from the 32nd precinct approached him, ordered him to stop, and searched Nathan without just or probable cause. While searching Nathan, the officers ran his license and falsely claimed that he had an open warrant. Nathan was arrested and taken to the precinct. At the precinct, Nathan was repeatedly searched. An officer made Nathan strip down and a cavity search was conducted. Nathan was falsely charged with Disorderly Conduct, which was later dismissed. Upon information and belief no investigation or disciplinary action was taken against the police officers.

      r.     On June 16, 2007 at 9:30 p.m. Arthur Thomas, an African American male, was in the vicinity of 2507 Seventh Avenue, in New York County, walking to his wife's salon. Officers from the 32nd precinct stopped Mr. Thomas and asked him if he was drinking alcohol. Mr. Thomas showed him his soda can, which he was carrying in a brown paper bag. Officers allowed Mr. Thomas to continue on his way. However, as Mr. Thomas continued to walk toward his destination, Officers ran after him, grabbed Mr. Thomas from behind, shoved him into a door frame and the counter inside his wife's salon. Mr. Thomas was forcibly lead outside in handcuffs and was humiliated in front of his wife and friends. Mr. Thomas was falsely charged with Disorderly Conduct and Failure to Comply. All charges were ultimately dismissed. Upon information and belief no investigation or disciplinary action was taken against the police officers.

      s.     On November 13, 2010 at 2:15 a.m. Michael Nelson, a young African American male, was legally outside in the vicinity of 1609 East 174th Street, in the Bronx, when two Officers from PSA8 grabbed Nelson and ordered him up against a nearby gate. When Nelson asked what he was being arrested for, said Officers threw him down on the ground, placed a knee in his back, kicked him, and struck him about the body. Shaina Johnson, a young African American female,

tried to take photos of the police misconduct. In response thereto unknown Officers rushed Johnson, pushed her down, slammed her into a telephone booth, and slammed her into the back of a car. Johnson was falsely charged with resisting arrest, obstruction of governmental administration, and disorderly conduct. Nelson was falsely charged with disorderly conduct and resisting arrest. All charges against Nelson have been dismissed. Johnson is currently being put through the emotional and mental duress of continuous court dates for her charges. Although many officers were present during the assault, not one reported it and, upon information and belief there was no meaningful investigation undertaken by the police department into the misconduct and no officers faced any disciplinary charges.

t.      On August 22, 2010 at 3:45 a.m. Matthew Dillard, an African American Male, was legally walking down 42nd Street, between 7th and 8th Avenues with his brother, Marc Dillard, when Officers from the 14th precinct, stopped and began to mace Marc. As Matthew questioned as to why Marc was being maced, other Officers maced, struck with a baton, smashed Matthew's head to the ground, and continued to strike and kick him on the floor. Matthew was falsely charged with resisting arrest, obstructing governmental administration, and felony assault which were later dismissed. Upon information and belief no investigation or disciplinary action was taken against the police officers.

u.      On July 5, 2009 at 9 p.m. Tameeka Manning, a young African American female, was lawfully inside the 77th precinct in Brooklyn to make a complaint about a police brutality incident which she had witnessed. The Desk Sergeant was rude and uncooperative. Upon reaching for her bag to leave the precinct, the Sergeant grabbed her, pushed her backwards, and ordered other officers to "take her down." Mrs. Manning was handcuffed and punched in the face twice.

She was called derogatory names. Manning was falsely charged with resisting arrest and criminal mischief. All charges were dismissed at trial. Manning suffered subconjunctival hemorrhage of the left eye, physical scarring about the body, and multiple knots to the head. Upon information and belief no investigation or disciplinary action was taken against the police officers.

v.      On April 25, 2008 at 9:50 p.m. Robert Medine, a young African American male, was lawfully walking home on Arthur Avenue in the Bronx, when access to his block was denied by Officers of the 48th precinct. Medine tried to explain that his residence was in the immediate area and the Officers pushed him into a nearby gate, tripped him, and assaulted him with their fists, feet and nightsticks. He was handcuffed, and transported to the precinct. Once inside the 48th precinct, Officers brought Medine into a bathroom and slammed his face into a wall multiple times before returning him to his holding cell. He was falsely charged with assaulting a police officer, assault in the third degree, resisting arrest, obstruction of governmental administration, and harassment. After undergoing the emotional stress of a trial, Medine was found not guilty of all charges. Medine suffered from intracranial injury, deep and extreme bruising, a disfigured face due to the open wounds and scrapes, decreased range of motion of his neck, and chronic weakness in his ankle. Although many officers were present during the assault, not one reported it and, upon information and belief there was no meaningful investigation undertaken by the police department into the misconduct and no officers faced any disciplinary charges.

w.      On March 2, 2009 James Barker, a minor African American male, was walking home. Police, absent reasonable suspicion ran after him, and despite lacking probable cause to believe that a crime had been committed, they forcibly broke into the house without a warrant or exigent circumstances. Once inside numerous police officers proceeded to assault the occupants of

the home, who had come out of their rooms to see what was going on. Leander Barker, James

Barker, Odessa Paul, Donette Ritchie, Shanelka Barker, Sean Colbourne, Sean Barker, were each

falsely arrested and transported to the 46th pct.. Joseph Barker, the elderly bedridden grandfather

was maced in the eyes. All were falsely charged with carious forms of obstructing governmental

administration, resisting arrest, assault, menacing and/or harassment. All criminal charges against

all the aforementioned individuals were dismissed. Not one officer interceded to stop the police

misconduct. Not one officer reported the misconduct. Upon information and belief the NYPD

failed to investigate the incident, or did not conduct a meaningful investigation and no officer was

disciplined for said blatant disregard to this family's constitutional rights.

     w.     On or about June 7, 2010 at approximately 1:20 p.m. there was police activity

outside the apartment of Ciara and Giselle Smith at 1479 McCombs Avenue in the Bronx. The

incident caused Ciara to open the door to see what was going on. Police Officers grabbed Ms

Smith, forcibly pulled her from her home, and entered the premises with guns drawn and without a

warrant. The police pointed guns at the babysitter who was inside the apartment holding the baby.

The searched the apartment, and when objected to by Ms Smith , the babysitter and Giselle Smith

who subsequently arrived at the location, they were each assaulted and arrested. All criminal

charges were dismissed. Upon information and belief the NYPD failed to investigate the incident,

or did not conduct a meaningful investigation and no officer was disciplined for said blatant

disregard to this family's constitutional rights.

312.     The acts of police officers who violate the civil and constitutional rights of the Citizens of

New York routinely go unreported by fellow police officers, not investigated by their superior

officers, and consequently their acts, actions, omissions go unpunished. Failure to intervene and

report is the norm, not the exception. In none of the cases cited in paragraph 311 a-w above did the police officers intervene in the face of misconduct; nor did they report the misconduct of their fellow officers, or receive and punishment for having failed to do so. Consequently, the acts of police officers in which they use excessive force, engage in racial profiling, making or file false arrests and reports, make warrantless entry into citizens homes, etc, are condoned by other officers present, their supervisors, precinct Commanders, including DeEntremont and the NYPD Commissioner Kelly

313.    The City's and/or NYPD tolerance for brutality, excessive force, illegal and/or retaliatory arrests, and their emphasis to "come down hard on quality of life infractions, leads to a systemic practice and policy wherein officers seem fairly tolerant, both outwardly and inwardly of police brutality, silence in the face of brutality and/or illegal stops, frisks, searches, seizures and/or arrests, warrantless entry into citizens homes, and engage in arrest quotas. A systemic practice where officers who report said misconduct are not viewed as "good cops", but rather as outcasts and snitches and are isolated, ostracized and often transferred, thereby perpetuating the illegal conduct of the officers.

314.    Some instances where officers were treated as outcasts for reporting misconduct and/or an arrest/summons quota system are as follows:

      a. The existence of arrest quotas, summons quotas and approval of illegal stops and arrests have been exposed by Police Officer Adrian Schoolcraft in a separate lawsuit which was cited by Justice Sheindlin, in <u>David Floyd et al v The City of New York</u>, 08 civ 1034

      b. Justice Sheindlin cited the deposition of Police Officer Adhyl Polanco of the 41st Precinct, stating that commanding officers set specific quotas for arrests and summons and

for stop and frisks (UF-250's), and threatened to reduce overtime for officers who failed to perform well and to re-assign those who fail to meet quotas to less desirable posts.

c. According to secretly tape recorded conversations made by Schoolcraft, a Lieutenant, a Deputy Inspector and a Chief of Transportation all can be heard encouraging/demanding increased stops, summons, detentions and/or arrests.

d. Police Officer Craig Matthews of the 42nd Precinct filed a lawsuit against the NYPD claiming the existence of a quota system, and a systematic retaliation and harassment to those who did not comply.

e. Recently, retired Detective James Griffin, filed a lawsuit claiming that in the NYPD there exists a culture wherein officers who report corruption, face harassment and a hostile work environment, and that this conduct was tolerated by supervisors within the NYPD.

315.    Upon information and belief, arrest quotas and summons quotas, often couched by the defendants as "performance standards", are ingrained as a part of a NYPD officer's job, leading to shortcuts and violations of citizen's constitutional rights to meet these so called performance levels.

316.    The NYPD's customs, practices and policies, and the City, NYPD and/or Kelly's deliberate indifference to the widespread Federal and State constitutional violations, violations of New York State Law, violation of  NYPD Patrol and Administrative Guidelines, permitted the officers on February 2, 2012 to illegally enter Ramarley's home without a warrant; to act without probable cause, to forcibly enter the home with guns drawn, aimed and loaded, to seize Ramarley Graham and use deadly force when he was unarmed and posed no threat, and to seize and intimidate, and assault and batter witnesses to said conduct.

317.    Upon further information and belief, the defendants deliberate indifference allowed the officers named herein to manufacture reasons for their conduct, i.e entering the home based on "belief of a weapon", ex post facto, when in fact there was no justification for said conduct at that time.

318.    Upon information and belief the defendant officers involved in the shooting were on narcotic observation assignment. According to police accounts they observed Ramarley and his friends exiting a store they had under observation. Upon information and belief the officers involved were not trained in, or on gun or street crime detail.

319.    Upon information and belief the police officers assigned to the SNEU team wrongfully believed that Ramarley or his friends were involved in a narcotics transaction and they followed them. The officers did not follow proper procedures or protocol: they did not call into Command that they were following a male with a gun and they did not request back-up; they did not stop Ramarley in the street, although he walked four blocks from where they initially observed him; and they did not call for back up or a trained tactical unit once Ramarley entered his home. In sum, the NYPD, and the officers herein, conspired to manufacture reasons to justify their unconstitutional entry into the home and their unjustifiable shooting therein.

320.    Upon information and belief, this would not be the first time that the police conspired to justify a shooting ex post facto. On November 25, 2006 Sean Bell, Joseph Guzman, and Trent Benefield were shot at multiple times by New York City Police Officers without reason or provocation. All three were unarmed. After the shooting, the police claimed that they thought they saw Guzman, who was inside the car operated by Bell, reach for a gun, and yelled "gun" to other officers at the scene. Later, the police claimed that there was a mysterious 4th man who may have

had a gun, but fled the scene. There was no evidence that anyone but the police fired or possessed a gun at the scene.

321.    On or about October 4, 2012, police pulled over a vehicle near LaGuardia Airport, and shot and killed Noel Polanco. They originally claimed that Polanco, a member of the New York Army Guard, shot and killed himself. That was false.

322.    On May 22, 2003 Ousmane Zongo was a craftsman in a building that the NYPD had targeted for the pirating and sale of illegal CD's and DVD's. Officer Conroy was undercover, disguised as a postal worker. Zongo turned on a light and Conroy chased Zongo. Zongo had nothing to do with the alleged counterfeiters. Conroy drew his weapon and shot the unarmed Zongo four times, killing him.

323.    On November 6, 2009, at 4:30 p.m. in the courtyard of 3021 Holland Avenue, Bronx, New York, Police Officer Bocachica of the 47th pct, shot Marcus Bonner in the face when he claimed that he thought that Bonner was reaching for a weapon. Bonner was never charged with menacing or brandishing a weapon, and all charges against him were ultimately dismissed. Both Bocachica and his partner conspired to falsely allege that Bonner was reaching for, or displaying a weapon. A civil lawsuit is still pending.

324.    Officers within the 47th pct., and in most, if not all Commands throughout the City, routinely engage in cover-ups to justify illegal conduct, or to help their "brother police officer". In addition to the aforementioned cases, the plaintiffs cite additional instances below, which upon information and belief occurred under the command of defendant DeEntremont.

325.    On March 30, 2007, police from the 47th pct. entered the home of Nayshawn, Gladys and Willie Williams at 4044 Laconia Avenue, Bronx, New York, at gun point. Guns were pointed at

them, they were assaulted, and mocked. At no time did the officers display a search warrant. It was later learned that the officers had entered and searched the wrong apartment. No discipline was imposed on the police officers. The City settled the civil lawsuit.

326.    On September 9, 2008 at approximately 10:30 a.m., police from the 47th pct, entered the home of Rafael Santana located at 1165 East 229th Street, Bronx, NY. The officers searched the home and physically removed Santana from his home. Santana was assaulted and battered by numerous police officers from the 47th pct.

327.    On May 16, 2010, Steven Lloyd, a young African American male, was lawfully walking in the vicinity of 780 Magenta Street in the 47th pct.. He was grabbed from behind and thrown to the ground by a police officer. Lloyd was beaten up and received 8 stitches to the head. One of the officers involved in the arrest was Haste. Civilians informed the police they had apprehended the wrong person, however Lloyd was already injured. The officers filed false charges against Lloyd and to cover up their misconduct. All criminal charges were dismissed against Lloyd and the City settled the civil case. Upon information and belief no Departmental charges or disciplinary action was taken.

328.    On September 18, 2010, Anthony and Chantell Marshall, both African Americans, were lawfully present at the intersection of Barnes Avenue and East 214th Street in the 47th pct. Officers made inquiry of Chantel about a stabbing which occurred earlier that even. When Anthony advised her that she did not have to go to the precinct (she was not under arrest), both were arrested and subjected to excessive force. The police falsely accused the Marshalls of felony assault of a police officer, resisting arrest, and obstructing governmental administration. Anthony sustained a distal fibula fracture. Upon information and belief no disciplinary action was taken against the officers,

who, upon information and belief were from the 47th pct.

329.    On January 28, 2010 at or near 3556 Carlisle Place, Bronx, New York, police from the 47th pct., stopped, seized, and searched Brian Montes, John L. Scott, Jr, and Doniel Lewis, absent reasonable suspicion or probable cause. They were subsequently released and all charges dismissed. Upon information and belief no disciplinary action was taken against the officers, who, upon information and belief were from the 47th pct.

330.    Upon information and belief on March 30, 2010 at or near East 220th Street and White Plains Rd, Bronx, New York, police from the 47th pct., stopped, seized, and searched Benetio Myton, absent reasonable suspicion or probable cause. He was subsequently released and all charges dismissed. Upon information and belief no disciplinary action was taken against the officers, who, upon information and belief were from the 47th pct.

331.    Upon information and belief on April 14, 2010 at or near 2911 Holland Avenue, Bronx, New York, police from the 47th pct., stopped, seized, and searched Kevin Gibbs and Kamal Kerr, absent reasonable suspicion or probable cause. The Bronx District Attorney Office declined to prosecute the cases. Upon information and belief no disciplinary action was taken against the officers, who, upon information and belief were from the 47th pct.

332.    On October 15, 2008, in front of 849 East 227th Street, Bronx, New York, police from the 47th pct., stopped, seized, and searched Haldene Dunkey, absent reasonable suspicion or probable cause. Upon information and belief the police used excessive force during the arrest. He was subsequently released and upon information and belief all charges dismissed. Upon information and belief no disciplinary action was taken against the officers, who, upon information and belief were from the 47th pct.

333.    On February 16, 2009, William Jones, a young African American male, was walking while wearing headphone, when police from the 47th pct. ran up behind Jones, who was unaware of their presence and tackled him to the ground. Although the police subsequently realized that he was not the suspect that they were looking for, they still arrested Jones and falsely charged him with disorderly conduct and resisting arrest.  Jones head was slammed down in the precinct and he received stiches. All criminal charges were subsequently dismissed, and the City settled the civil case. Upon information and belief no disciplinary action was taken against the officers, who, upon information and belief were from the 47th pct.

334.    Upon information and belief, police officers are rarely prosecuted, disciplined or investigated for providing false statements, filing false reports, illegally accessing sealed records, and/or making false arrests. Upon information and belief the only times, if any, that occurs is when there is videotape evidence of said misconduct.

335.    In February 2012, Detective Debra Eager, of the 47th pct was indicted by a Bronx Grand Jury for lying in testimony in which two men were apprehended with two parcels containing 33 pound of marijuana. Videotape proof caught Detective Eager in her lies. Upon information and belief no disciplinary action was taken against her by the NYPD at the time of her indictment.

336.    Detective Francisco Payano was indicted by a Bronx Grand Jury for perjury and other offenses in connection with his testimony about illegal drug sales that never occurred. He gave false testimony to a grand jury 13 times and lied under oath 36 times during a hearing that took place on January 22 and January 27, 2010 to establish probable cause. Upon information and belief the underlying incident was alleged to have occurred in the 47th pct on Bronx Boulevard near East 224th Street. Videotape proof caught Det Payano in his lies. Upon information and belief no

disciplinary action was taken against Payano or his partner at the time of his indictment.

337.   Upon information and belief Police Officer Patrick Pogan, falsely charged cyclist Christopher Long with assault, resisting arrest and disorderly conduct. Yet all charges were dismissed and the officer was indicted when videotape showed Pogan knocking the cyclist off the bicycle. Upon information and belief no action was taken against the officer by The New York City Police Department.

338.   Upon information and belief, in January 2009 two undercover narcotics officers, Henry Tavarez and Detective Stephen Anderson were criminally charges with official misconduct and conspiracy after they lied about a buy and bust operation. A video was produced showing that the officers had no contact with the accused. Again, upon information and belief no disciplinary action was taken against the officers by the NYPD.

339.   Upon information and belief, in January 2009 Police Officer David London was indicted for assault and filing false records after a surveillance camera at an Upper West Side Building showed the officer pulling the accused from an elevator and beating him with a baton. The accused had been charged with resisting arrest. Upon information and belief no departmental charges were filed against London or his partner.

340.   Police Officer Isaias Alicea, a West Harlem Housing Patrol Officer assigned to PSA 6 is currently indicted for lying on paperwork concerning the search and arrest of a drug suspect. Although Alicea claimed to have seen one individual selling drugs to another individual, a videotape of the lobby where the transaction allegedly occurred showed no contact whatsoever between the men. All criminal charges were dismissed against the accused seller. Alicea is currently charged with 10 felony counts of offering a false instrument and two misdemeanor count

of official misconduct. Upon information and belief no investigation or disciplinary action had been taken by the NYPD prior to the indictment.

341.  The same customs, policies, practices and deliberate indifference allowed the officers to use force on Patricia Hartley, seize, imprison and intimidate her after she witnessed and objected to the officer's misconduct, and allowed the police officers to engage in a cover-up of their conduct.

342.  The deliberate indifference lead to the traumatization of Patricia Hartley and Chinnor Campbell when Ramarley Graham was shot and killed before their eyes, and Chinnor also witnessed the police subsequently assault his grandmother.

343.  The deliberate indifference caused or contributed to the seizure and imprisonment of Patricia Hartley, against her will, and the battery of her person when she attempted to leave the 47th precinct.

344.  The deliberate indifference caused of contributed to the assault and batter inside the 47th pct., by unknown police officers, of Constance Malcolm when she tried to reach her mother, Patricia Hartley, for comfort and answers.

345.  The deliberate indifference caused or contributed to false statements issued by police and release of sealed information concerning Ramarley Graham to the public.

346   Upon information and belief the purpose of Criminal Procedure Law 160.50 governing sealed records, is to eliminate the potential for wide availability or access and to remove the potential stigma associated with an arrest from the public domain or knowledge. The NYPD's practice of accessing and releasing the complete arrest records, including sealed cases, of individuals who were victims of high profile cases of police brutality or misconduct, is rarely investigated or punished.

347.    Upon information and belief, the aforesaid constitutional violations was also fueled by a long ingrained "code of silence", within the NYPD, which permitted or encouraged officers who witness constitutional violations committed by fellow officers to keep quiet, conceal the facts, shade the truth, and/or conspire with the violators by aiding and abetting their violations, both actively and passively, through their actions, silence and indifference.

348.    The City has been deliberately indifferent to the need for more or different training, rules and regulations regulating and disciplining officers who "fail to report", who "report falsely", who "fail to intervene", who are in need of counseling, thereby causing or encouraging officers to violate the constitutional rights of the citizens of New York, including the officers in this case, who violated the rights of Ramarley Graham, Patricia Hartley, Constance Malcolm, and Chinnor Campbell.

349.    That at all times, the officers, Haste, Morris, Jane Doe, Horne, Jarvis and other unknown officers, sued herein as John Does 1-10, were acting under color of law and within their authority as law enforcement officers employed by the NYPD

350.    That by reason of the aforesaid, the plaintiff, Constance Malcolm, as administratrix of the Estate of Ramarley Graham, as and for a NINTH Cause of Action demands judgment against the defendants in a sum exceeding the jurisdictional limits of all the lower courts.

351.    That by reason of the aforesaid, the plaintiff, Patricia Hartley, as and for a TENTH Cause of Action demands judgment against the defendants in a sum exceeding the jurisdictional limits of all the lower courts.

352.    That by reason of the aforesaid, the plaintiff, Constance Malcolm, as mother and natural guardian of Chinnor Campbell, a minor, as and for an ELEVENTH Cause of Action demands

judgment against the defendants in a sum exceeding the jurisdictional limits of all the lower courts.

353.   That by reason of the aforesaid, the plaintiff, Constance Malcolm, as and for a TWELFTH

Cause of Action demands judgment against the defendants in a sum exceeding the jurisdictional

limits of all the lower courts.

354.   The plaintiffs each seek damages, as well as attorneys fees, costs and punitive damages

pursuant to 42 USCA 1983, 1988.

**AS AND FOR AN THIRTIENTH AND FOURTIENTH CAUSE OF ACTION ON BEHALF OF CONSTANCE MALCOLM, AS ADMINISTRATRIX OF THE ESTATE OF RAMARLEY GRAHAM, AND PATRICIA HARTLEY AGAINST POLICE OFFICERS HASTE, MORRIS, HORNE, JARVIS, JANE DOE, DEENTREMONT AND OTHER POLICE OFFICER JOHN DOES, AND INDIVIDUALLY AND AS POLICE OFFICERS FOR CONSPIRACY UNDER 42 USCA 1985,1988**

355.   The plaintiff, Estate of Ramarley Graham by its administratrix, Constance Malcolm, and

Patricia Hartley, repeats and realleges each and every allegation set forth above numbered "1"

through "354" inclusive with the same force and effect as if more fully set forth at length herein.

356.   That on February 2, 2012, the defendants, acting under color of State law, violated the

Federal and State civil and constitutional rights of the decedent, Ramarley Graham, in that they

conspired to cover-up the evidence, including that, upon information and belief, that

knew of the glaring inconsistencies in the explanations of the shooting, had supervisory power

over all the other officers present who participated in the cover-up and failed to meaningfully

investigate their inconsistencies and false statement; and disregarded his obligation to be fully

advised and to investigate and report such inconsistencies, and thereby neglected to prevent said

conspiratorial acts.

357.   That said defendants through their silence, acts, omissions, violence and threats, and false

statements attempted to conceal the facts and circumstances of the shooting.

358.    That the defendants attempted to interfere with the plaintiffs due process rights to seek access to the Courts, or access to justice, as protected by 42 USCA 1985 (2,3) and by the First Amendment.

359.    That by reason of the aforesaid, the plaintiff, Constance Malcolm, on behalf of the Estate of Ramarley Graham demands judgment against the defendants in a sum exceeding the jurisdictional limits of all the lower courts on the THIRTIENTH cause of action.

360.    The plaintiff, Estate of Ramarley Graham seeks damages as well as attorneys fees, costs and punitive damages pursuant to 42 USC 1985,1988.

361.    That by reason of the aforesaid, the plaintiff, Patricia Hartley demands judgment against the defendants in a sum exceeding the jurisdictional limits of all the lower courts on the FOURTIENTH cause of action.

362.    Patricia Hartley seeks damages as well as attorneys fees, costs and punitive damages pursuant to 42 USC 1985,1988.

### AS AND FOR A FIFTEENTH THROUGH EIGHTEENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, ESTATE OF RAMARLEY GRAHAM BY CONSTANCE MALCOLM AS ADMINISTRATRIX, PATRICIA HARTELY, CHINNOR CAMPBELL, BY HIS MOTHER AND NATURAL GUARDIAN CONSTANCE MALCOLM, AND CONSTANCE MALCOLM, INDIVIDUALLY AGAINST DEFENDANT CITY FOR NEGLIGENT HIRING AND RETENTION

363.    The plaintiffs, Estate of Ramarley Graham by its administratrix, Constance Malcolm, and Patricia Hartley, Chinnor Campbell and Constance Malcolm repeat and reallege each and every allegation set forth above numbered "1" through "362" inclusive with the same force and effect as if more fully set forth at length herein. .

364.    That the defendant "City" was negligent, careless and reckless in hiring, retaining, supervising and promoting as and for its employees, "the officers" herein, in that said officers, as employees of the City of New York, were not qualified to be hired or retained or promoted as police officers, lacked the experience, deportment, skill, training and ability to be employed by the defendant "City"; to be retained by the defendant, "City"; and to be utilized in the manner that each was employed on the day in question.

365.    That the defendant, "City", failed to exercise due care and caution in its hiring, retaining and/or promoting practices; in that the defendant "City" failed to adequately investigate said police officers' backgrounds; adequately screen and test the defendant police officers; failed to adequately monitor the defendant police officers; failed to properly discipline officers who violate Patrol Guidelines; failed to properly train and retrain the defendant police officers; and in that the defendant "City", its' agents, servants and/or employees, were otherwise careless, negligent and reckless.

366.    That the aforesaid occurrence, to wit: illegal search and seizure, forcible entry into the plaintiffs home without a warrant or probable cause and exigent circumstances; displaying and pointing a loaded weapon; firing a loaded weapon; assaulting and threatening a witness to the discharge of the firearm; shooting when others are in the zone of danger; using excessive force, using deadly force; engaging in false imprisonment and conspiracy to cover up their actions and the resulting injuries to the plaintiffs, were caused wholly and solely by reason of the negligence or deliberate indifference of the defendant "City", its' agents, servants and/or employees without any negligence on the part of the plaintiffs contributing thereto.

367.    That by reason of the aforesaid, Ramarley Graham was profiled, was illegally seized,

assaulted, battered, subjected to the excessive use of force, subjected to deadly force and was killed.

368.     That by reason of the aforesaid, under the Fifteenth Cause of action, the plaintiff Estate of Ramarley Graham has been damaged in a sum exceeding the jurisdictional limits of the lower courts.

369.     That by reason of the aforesaid, Patricia Hartley was illegally seized, assaulted, battered, falsely imprisoned, threatened, subjected to the excessive use of force, witnessed the death of her grandson by the conduct of the defendants while she was in the zone of danger and as a result she was emotionally traumatized and damaged.

370.     That by reason of the aforesaid, under the Sixteenth Cause of Action, the plaintiff, Patricia Hartley, has been damaged in a sum exceeding the jurisdictional limits of the lower courts.

371.     That by reason of the aforesaid, Chinnor Campbell was illegally seized, witnessed the shooting death of his brother and the assault of his grandmother by the defendants while he was in the zone of danger and as a result he was emotionally traumatized and damaged.

372.     That by reason of the aforesaid, under the Seventeenth Cause of Action, the plaintiff, Chinnor Campbell has been damaged in a sum exceeding the jurisdictional limits of the lower courts.

373.     That by reason of the aforesaid, Constance Malcolm was assaulted and battered and was emotionally traumatized and damaged.

374.     That by reason of the aforesaid, under the Eighteenth Cause of Action, the plaintiff, Constance Malcolm has been damaged in a sum exceeding the jurisdictional limits of the lower courts.

Ramarely Graham and Chinnor Campbell.

391.   Patricia had resided with both Ramarley and Chinnor since they were born and was a maternal, loving, and important figure in their lives, and they in hers.

392.   On February 2, 2012 at approximately 3:00 p.m., Patricia Hartley was home with her grandsons, when police forcibly broke down the door to their home and entered with guns drawn and ready to fire.

393.   Patricia Hartley was several feet away when she witnessed Officer Haste without provocation or need, fired his weapon at her grandson, Ramarley Graham.

394.   Patricia Hartley was several feet from Ramarley and could see him lying on the floor with his leg trembling.

395.   That as a result of witnessing this egregious and unjust conduct the plaintiff, Patricia Hartley, sustained extreme emotional distress.

396.   Said distress was foreseeable to the defendants in that they entered the home without a warrant, and once inside the plaintiff was visible to the defendants, and in the very hallway from where they shot and killed her grandson, and as such she was in the zone of danger of bodily harm and injury, including death, which did result herein.

397.   Patricia Hartley is part of Ramarley Graham's immediate family.

398.   That by reason of the aforesaid, the plaintiff, Patricia Hartley suffered, and still continues to suffer from serious permanent psychological injuries to her body and mind, and that she was otherwise damaged.

399.   That by reason of the aforesaid negligent disregard of bodily or deadly injury, i.e zone of danger, the plaintiff, Patricia Hartley has been damaged in a sum exceeding the jurisdictional

limits of the lower courts.

**AS AND FOR A TWENTY-SECOND CAUSE OF ACTION ON BEHALF OF PATRICIA HARTLEY AGAINST POLICE OFFICERS HASTE, MORRIS, HORNE, JARVIS, JANE DOE, AND OTHER POLICE OFFICER JOHN DOES, INDIVIDUALLY AND AS POLICE OFFICERS UNDER 42 USCA 1983, 1988**

400.   The plaintiff, Patricia Hartley repeats and realleges each and every allegation set forth above numbered "1" through "399" inclusive with the same force and effect as if more fully set forth at length herein.

401.   That on February 2, 2012, the defendants, acting under color of State law, violated the Federal and State civil and constitutional rights of Patricia Hartley, in that they:

a. entered the plaintiff's home without an arrest or search warrant

b. entered the plaintiff's home without probable cause

c. entered the plaintiff's home without exigent circumstances.

d. violated the plaintiff's  right to privacy

e. assaulted and battered the plaintiff

f. used excessive force against

g. discharged their weapon while the plaintiff was in the zone of danger

h. conspired to cover-up the shooting of the decedent, and attempted to psychologically traumatize the plaintiff to coerce her to make a false statement

i. falsely imprisoned the plaintiff

j. denied plaintiff access to her attorney

k. threatened and cursed at the plaintiff

l. acted in gross disregard to the plaintiff's physical and emotional health and safety

402.   The defendants, including the named defendant police officers, at all relevant times hereunder acted within their authority as law enforcement officers within the employ of the defendants, "City" and "NYPD".

403.   The defendants conspired with one another to deprive Patricia Hartley of her constitutional rights: to be free from the intentional use of force: to be free from unreasonable search and seizure, to be free from serious physical injury, to due process of law, to access to counsel, and to be secure in her person and home and free from unreasonable and excessive force.

404.   The defendants further violated the civil rights of the plaintiff by retaliating against her as a witness to the facts and circumstances of the shooting of her grandson Ramarley Graham, and by falsely imprisoning her and denying her access to her daughter, her lawyer and to a telephone.

405.   The defendants' actions are not privileged or immune.

406.   That said acts or actions resulted in the unlawful entry into plaintiff's home, a 4th Amendment seizure of plaintiff's person, shooting Ramarley Graham while Patricia Hartley was in the zone of danger, assaulting, battering and threatening the plaintiff, imprisoning the plaintiff, denying her access to counsel, and causing her conscience pain and suffering, including extreme emotional distress.

407.   That by reason of the aforesaid, the plaintiff, Patricia Hartley, demands judgment against the defendants in a sum exceeding the jurisdictional limits of all the lower courts.

408.   The plaintiff seeks damages as well as attorney's fees, costs and punitive damages pursuant to 42 USC 1988.

**AS AND FOR A TWENTY-THIRD CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF, CHINNOR CAMPBELL, BY HIS MOTHER AND NATURAL GUARDIAN, CONSTANCE MALCOLM, FOR NEGLIGENTLY EXPOSING THE PLAINTIFF TO AN UNREASONABLE RISK OF BODILY INJURY OR DEATH, I.E ZONE OF DANGER:**

409.    The plaintiff, Chinnor Cambell, a minor, by and through his mother and natural guardian Constance Malcolm, repeats, reiterates and realleges each and every allegation contained in paragraphs marked "1" through "408" with the same force and effect as if fully set forth herein.

410.    That on the 2nd day of February, 2012, the plaintiff, Chinnor Campbell resided at 749 East 229th Street, Bronx, New York, with his mother, Constance Malcolm, his grandmother Patricia Hartley, and his brother, Ramarely Graham.

411.    Chinnor has resided with his brother, Ramarley and grandmother, Patsy, since the time that he was born and enjoyed an extremely close and loving relationship with them both. His grandmother was a maternal and important figure in his life. His brother, Ramarley provided him with love, nurture and direction. They had a special relationship.

412.    On February 2, 2012 at approximately 3:00 p.m., Chinnor Campbell was home with Patsy and Ramarley, when police forcibly broke down the door to their home and entered with guns drawn and ready to fire.

413.    Upon information and belief Chinnor Campbell was extremely scared and present in close proximity when he witnessed Officer Haste without provocation or need, fire his weapon at his brother, Ramarley Graham.

414.    Upon information and belief Chinnor Campbell was extremely scared and present in close proximity when he witnessed Police Officers Haste, Morris and Jane Doe without provocation or need, assault and batter his grandmother, Patricia Hartley.

415.    That as a result of witnessing this egregious and unjust conduct the plaintiff, Chinnor

Campbell, sustained extreme emotional distress.

416.    Said distress was foreseeable to the defendants in that they entered the home without a

warrant, and once inside they disregarded the visible presence of Chinnor Campbell and Patricia

Hartley and they entered with guns drawn and ready to fire and Haste shot and killed Chinnor's

brother, Ramarley in his presence. Chinnor was in the zone of danger of bodily harm and injury,

including death, which did result herein.

417.    Further distress occurred and was foreseeable to the defendants in that they entered the

home without a warrant, and once inside they disregarded the visible presence of Chinnor

Campbell when they assaulted and battered his grandmother, Patricia Hartley. Upon information

ad belief Chinnor witnessed the police threaten his grandmother with a gun, push her down, twist

her arms behind her back, forcefully grab her phone from her, when they forcibly held her down

and threatened to handcuff her. Chinnor was in the zone of danger of bodily harm and injury, of his

grandmother.

418.    Chinnor Campbell is part of Ramarley Graham's and Patricia Hartley's immediate family.

419.    That by reason of the aforesaid, the plaintiff, Chinnor Campbell suffered and still continues

to suffer from serious permanent psychological injuries, and that he was otherwise damaged.

420.    That by reason of the aforesaid negligent disregard of bodily injury, i.e zone of danger, the

plaintiff, Chinnor Campbell by his mother and natural guardian Constance Malcolm, has been

damaged in a sum exceeding the jurisdictional limits of the lower courts.

**AS AND FOR A TWENTY-FOURTH CAUSE OF ACTION ON BEHALF OF CHINNOR
CAMPBELL, A MINOR, BY HIS MOTHER AND NATURAL GUARDIAN CONSTANCE
MALCOLM AGAINST POLICE OFFICERS HASTE, MORRIS, HORNE, JARVIS, JANE**

to inflict emotional distress upon the plaintiff, Patricia Hartley.

431.    That 'the officers', at the aforementioned date, time and location, acting in the scope of their employment, acted in a manner that exceeded all reasonable bounds of decency, disregarding the foreseeable and likely consequence that said conduct would, could and did inflict emotional distress upon the plaintiff, Chinnor Campbell

432.    That the plaintiff Patricia Hartley did sustain emotional distress as a result of the defendant officers' conduct which was committed in the scope of their employment with the NYPD and the City, and was committed under the color of law.

433.    That the plaintiff Chinnor Campbell did sustain emotional distress as a result of the defendant officers' conduct which was committed in the scope of their employment with the NYPD and the City and under the color of law.

434.    That by reason of the aforesaid, the plaintiff, Patricia Hartley, as and for a Twenty-fifth cause of action, has been damaged in a sum exceeding the jurisdictional limits of the lower court.

435.    That by reason of the aforesaid, the plaintiff, Chinnor Campbell, by his mother and natural guardian Constance Malcolm, as and for a twenty-sixth cause of action, has been damaged in a sum exceeding the jurisdictional limits of the lower court.

## AS AND FOR A TWENTY-SEVENTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF, CONSTANCE MALCOLM FOR ASSAULT AND BATTERY AGAINST THE DEFENDANTS:

436.    The plaintiff, Constance Malcolm repeats, reiterates and realleges each and every allegation contained in paragraphs marked "1" through "435" with the same force and effect as if fully set forth herein.

437.    That on the 2nd day of February, 2012, the plaintiff, Constance Malcolm was assaulted and

## ATTORNEY'S VERIFICATION

The undersigned, an attorney admitted to practice in the Courts of the State of New York certifies as follows:

That I am a partner in the law firm of Emdin & Russell, LLP, the attorneys of record for the Plaintiff in the within action; that I have read the foregoing Verified Complaint and know the contents thereof; that the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters, I believe them to be true. The undersigned further states that the reason this Verified Complaint is made by me and not by the Plaintiffs is that the Plaintiffs, with the exception of Franzlot Graham, do not reside in the county in which my office is located. The grounds of my belief as to all matters stated upon my knowledge are my interviews with the Plaintiff and a reading of the documents in my case file. The undersigned affirms that the foregoing statements are true, under the penalty of perjury.


Dated:   New York, New York
         January 30 , 2013


                                        By: Jeffrey L. Emdin, Esq.

STATE OF NEW YORK    ]
                             ]  ss.:
COUNTY OF NEW YORK  ]

I, Franclot Graham being duly sworn depose and say:   I am the plaintiff in the within the action, I have read the foregoing Verified Complaint, and know the contents hereof; the same is true to my own knowledge based upon my own knowledge and belief.

Franclot Graham, Plaintiff

Sworn to before me this
___ day of _____ 2013

Notary Public

JEFFREY L. EMDIN
Notary Public, State of New York
No. 02EM5068790
Qualified in Westchester County
Commission Expires November 12, 2014

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF BRONX**

ESTATE OF RAMARLEY GRAHAM, BY CONSTANCE MALCOLM, ADMINISTRATRIX, PATRICIA HARTLEY, CHINNOR CAMPBELL, A MINOR BY IS MOTHER AND NATURAL GUARDIAN CONSTANCE MALCOLM, FRANCLOT GRAHAM, AND CONSTANCE MALCOLM,

Claimant,

-against-

THE CITY OF NEW YORK, POLICE COMMISSIONER RAYMOND KELLY, NYPD, DEPUTY INSPECTOR PAUL DEENTREMONT, INDIVIDUALLY AND AS A SUPERVISING POLICE OFFICER, P.O. RICHARD HASTE, SHIELD #20875, 47TH PCT., INDIVIDUALLY AND AS A POLICE OFFICER, P.O. TYRONE HORNE, SHIELD #24885, INDIVIDUALLY AND AS A POLICE OFFICER, SGT. SCOTT MORRIS, SHIELD #953, INDIVIDUALLY AND AS AN OFFICER, POLICE OFFICER ANDREW JARVIS, SHIELD # 7776, INDIVIDUALLY AND AS A POLICE OFFICER, POLICE OFFICER JANE DOE, IDENTITY PRESENTLY UNKNOWN, 47TH PCT, SNEU UNIT, INDIVIDUALLY AND AS A POLICE OFFICER, AND POLICE OFFICERS JOHN DOES 1-10, IDENTITIES PRESENTLY UNKNOWN, EACH INDIVIDUALLY AND AS A POLICE OFFICER

Respondent(s).

## SUMMONS AND VERIFIED COMPLAINT

LAW OFFICES OF EMDIN & RUSSELL
Attorney for Claimant
499 Seventh Avenue, Floor 12N
New York, NY 10018
(212) 683-3995

TO:   Corporation Counsel
      Attorney for Respondents
      100 Church Street
      New York, New York 10007

Pursuant to 22 NYCRR 130-1.0, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

Dated: January 30, 2013

Signature

Jeffrey L. Emdin, Esq.

=====================================================================

PLEASE TAKE NOTICE

[ ]   NOTICE OF ENTRY
      that the within is a (certified) true copy of a
      duly entered in the office of the clerk of the within named court on

[ ]   NOTICE OF SETTLEMENT that an order      of which the within is a true copy will be
      presented for settlement to the HON.      one of the judges of the within named Court, at

on      20___